Charles Michael
+1 212 506-3900 direct
cmichael@steptoe.com

**Steptoe**

1114 Avenue of the Americas
New York, NY 10036-7703
212 506 3900 main
www.steptoe.com

October 13, 2022

**Via ECF**

Hon. Stewart D. Aaron
United States District Court
Southern District of New York
500 Pearl St., Room 1970
New York, NY 10007

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/14/22
```

Plaintiff's request is DENIED WITHOUT PREJUDICE. The subpoena to non-party Rowe was served upon him in Maryland and calls for compliance in Washington, D.C. Thus, Plaintiff may not seek relief in this Court in the first instance. Under Rule 45(f), "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). SO ORDERED.

Dated: 10/14/2022

Re:   *The Guardian Life Insurance Company of America v. Lloyd Polmateer, et al.,* Case No. 22-cv-1631

Dear Judge Aaron:

We represent plaintiff The Guardian Life Insurance Company of America ("Guardian") and write under Rule II.B of the Court's Individual Practices, to respectfully request a pre-motion conference to compel non-party L. Maurice Rowe to produce documents in response to a subpoena issued to him in July. To date, Mr. Rowe has made only a tiny and plainly incomplete production, and has ignored our efforts at gaining further cooperation.

**Background**

As the Court may recall, Guardian alleges (among other things) that two of its former general agents, defendants Lloyd Polmateer and Sean Joiner, breached certain restrictive covenants in connection with their move, in February 2022, from Guardian to a competitor, Massachusetts Mutual Life Insurance Company ("MassMutual").

Messrs. Polmateer and Joiner were the owners of a Guardian agency known as "First Financial Group," or FFG, and in their contracts with Guardian they agreed that, for a period ending one year after terminating their affiliation with Guardian, they would not directly or indirectly recruit other FFG personnel away from Guardian, and would not directly or indirectly solicit customers to shift their business away from Guardian. The two defendants were also under ongoing confidentiality obligations that are standard in the industry.

The evidence developed in discovery demonstrates that Messrs. Polmateer and Joiner breached these contractual duties (as well as their fiduciary duties) in the most flagrant ways, and

Hon. Stewart D. Aaron
October 13, 2022
Page 2 of 3

over a long period of time. They plotted for nearly one year prior to their move to MassMutual to help MassMutual raid FFG's most profitable financial representatives. The raid was made possible by Messrs. Polmateer and Joiner sharing highly proprietary information, including a detailed spreadsheet with data about FFG's "top producers." Messrs. Polmateer and Joiner worked behind the scenes to help MassMutual recruit those top producers, even though their contracts with Guardian prohibited any direct or indirect recruitment. The scheme has worked, with more than 30 FFG financial representatives joining Messrs. Polmateer and Joiner at MassMutual.

**The Subpoena to Mr. Rowe**

This application concerns discovery from one of the "top producers," L. Maurice Rowe, who was lured to MassMutual with a $1.5 million "forgivable loan" (essentially, a signing bonus). It appears that the amount of the lucrative signing bonus was calculated based on performance data that Messrs. Polmateer and Joiner improperly shared with MassMutual.

In July 2022, Guardian served Mr. Rowe with a subpoena seeking:

- "All documents and communications to or from any of Your personal email accounts (including Mo.rowe04@gmail.com) that were sent to or received from either MassMutual or Defendants"; and

- "All documents and communications relating to any efforts by MassMutual to recruit or contract with You or other First Financial Group Individuals . . . "

(Ex. A (subpoena); Ex. B (affidavit of service).)

**Mr. Rowe's Plainly Incomplete Response and Subsequent Failure to Engage**

Mr. Rowe responded by writing a letter to Guardian's counsel (not through an attorney) providing only *43 pages* of material that is plainly incomplete. (Ex. C (cover letter from Mr. Rowe).)

First, the production includes only 7 emails from the Gmail address referenced in the subpoena, when MassMutual alone produced *125 documents* containing that address.

Second, we just received yesterday, via a subpoena to AT&T, phone records for one of the defendants, Mr. Joiner, showing that, in the critical five-week period between when the defendants announced they were leaving Guardian, and when Mr. Rowe joined them at MassMutual, Mr. Joiner and Mr. Rowe exchanged *112 text messages*. (We do not yet have the records that may show how many texts were exchanged with Mr. Polmateer.) The phone records show only the dates of the text messages, not their substance.

Hon. Stewart D. Aaron
October 13, 2022
Page 3 of 3

Mr. Rowe did not produce *any* texts, and so Guardian is still in the dark as to these key discussions. Obtaining the text messages from Mr. Rowe is particularly important because the defendants, amazingly, failed to preserve their text messages from this critical period.[1]

We have emailed Mr. Rowe several times to follow up, and I have left him two voicemails this week. He has ignored our outreach altogether for several months, and so we are left with no choice but to seek the Court's assistance.

We will email and send this letter by overnight mail to Mr. Rowe. We respectfully request that the Court direct Mr. Rowe to provide a complete response to the subpoena, including any responsive emails and texts, within one week. As the court may recall, the parties are scheduled for a mediation on November 3, and Guardian believes it will be very helpful to have this evidence well before then.

We thank the Court for its assistance.

Respectfully submitted,

*/s/ Charles Michael*

Charles Michael

cc:   All Counsel of Record (via ECF)

---

[1] Guardian expects to raise this spoliation issue at a later time. The documents disclosed in discovery show that the defendants anticipated litigation from early in their dealings with MassMutual—that is, they fully expected to be sued—but they failed to preserve their text messages, even after the complaint was filed. The defendants initially claimed, falsely, that Guardian somehow deleted texts from their phones, but now claim that the texts were inadvertently lost because of an "auto-delete" setting. For purposes of this application, it suffices to emphasize that Mr. Rowe may be the only source for this important evidence.